Good afternoon. May it please the Court, Kimberly Weber, on behalf of the Petitioner Union, I would like to reserve three minutes for rebuttal, if I may. Your Honors, this case is here before you for the fourth time because of clear Board intransigence. The Board has abused its discretion once again, first by departing from an unbroken chain of 50-year precedent which establishes the appropriate and standard remedy in dues deduction cases, and by instead ordering only moot remedies. Second, the Board violated the principles of federal court review by refusing to accept this Court's 2011 decision for what it was, a legal interpretation of labor law as it existed in 1995. Based on these abuses, the Court to remand the case with instructions to issue the standard remedy. The first issue can be boiled down to three main points. The problem with the Board's capricious and arbitrary remedy is threefold. One, the Board knowingly ordered only moot remedies. Two, the Board these remedies are factually meaningless. Yes, and it has been clear in front of the Board since 1996, Your Honor. And you can see this going back to excerpt of record page 113 and 120. The Board has known that the employers had ceased operating their Las Vegas casinos back in 1995. And this is a longstanding fact. All of the remedies that the Board has ordered require a functioning employer. The only type of remedy that is standard within the Board's authority that does not require a functioning employer is money damages. Is there the power in the Board as a matter of remedy to modify? Does it always have to do the traditional remedy, or what does it have to do if it departs from the traditional remedy? No, Your Honor. The Board does have discretion, but it has to explain its decision and explain how it is using its discretion at all times. Here, the Board offered four reasons for its departure from its 50-year precedent of awarding reimbursement to the union, and all of those bases were non-logical. First, the Board claims that the Court's ruling in 2011 was contrary to Bethlehem Steel. That is a mischaracterization of the Court's ruling. Second, the Board complains that compound interest is unfair, yet the Board has not overturned its interest precedent. And moreover, a dispute about interest says nothing about the reimbursement of the principal amount. And the third basis was that the Board claims that the employers correctly followed the law in 1995. Did they say correctly, or did they just say that it's understandable that they were relying on Bethlehem Steel? Bethlehem Steel. Well, if Your Honor looks at the Board's decision, which is in the record, they used the word correctly, and that's in Excerpt of Records, page 5. As the Court knows, that is not the Court's own ruling and decision. The Court found that the employers violated the law in 1995. The fourth basis that the Board cited for its decision was that there is no reason to believe that the employers will violate the law going forward, again based on this idea that they correctly followed the law in 1995. But even assuming in arguendo that this is true, it would justify a refusal to deny prospective relief. But the Board ordered only prospective relief. And this reasoning does not justify denying the Board's ability to remedy the past wrong. As I mentioned before, these reasons cannot and do not explain the Board's decision to deny the only viable remedy. Let me ask you this. Why can't the Board, in formulating a remedy—I mean, you're right, we said the law—this isn't a question of retroactivity. We said what the law was, the violation was. So we sent it back and said, for purposes of formulating a remedy as appropriate, in constructing that remedy and going through the analysis of it, why can't they look at, or can they look at, the reliance factor? The Board can, as I say, the Board does have discretion. The problem with the Board's decision here is that it has claimed that it is issuing relief, but then it ordered no relief at all. And the problem here is the moot remedies in this Board's decision. That's another part of this And the reason why this is an abuse of discretion is that the Board stated that relief would be appropriate, and then they ordered no relief. So the moot remedies created this false front wherein the Board could explain the basis for a decision that it was not making. And similar, I think that going more directly to your question, Your Honor, when the Board went through its reliance question, it was copying word for word from the Board's prior order in the WKYC decision about retroactivity and prospective relief. Now, again, that was a decision that the Board was not making, that it did not have the authority to make, given the Ninth Circuit's law of the case. I might have a question that's a little premature, but if the employers are no longer in business, how long would your remedy run if you got it? So the remedy would run for as long as the employers employed the bargaining unit. It was approximately a year, maybe slightly less, Your Honors. I suppose that's a matter for a compliance. I would agree. Yes, I would agree with that, Your Honor. That's basically the basis for what is $162,000 that you say at a minimum should have been awarded? Yes, Archon estimated $162,000 as the principal amount. That is roughly correct. And going to the remedy, Your Honors, this case continues to be the rare case where an open-ended remand is inappropriate, and that is based on two principles. One, remand is inappropriate because the agency has refused to render a proper decision in this case, despite repeat opportunities. We are here now for a fourth time. The Board has persistently failed to recognize the authority and the direction of this Court, and there is no reason to believe that the Board will properly translate this Court's ruling now into appropriate relief. And the second guiding principle is that remand is unnecessary because the record has been fully developed and the conclusions that must follow from it are clear. The Board has found that relief is appropriate in this case. The Board, which has reviewed dues deduction cases for nearly 50 years, has already determined the appropriate and standard remedy for dues deduction violation case — excuse me, violation cases, and that is reimbursement to the union and to its members with interest. There are no exceptions to this rule. Now, this case is distinguishable from back pay remedies or bargaining order remedies, where sometimes the Board deems back pay appropriate, sometimes not. Sometimes a bargaining order appropriate, sometimes not. There are different formulas for back pay. There are different lengths of time for bargaining orders. There's a whole menu and array of options. But in dues deduction cases, despite a variety of different circumstances, there has only been one standard remedy, and that has been reimbursement to the union with interest. Is compound interest always required? Under current Board law, compound interest is required for make-whole remedies, and that is the Kentucky River medical case. What are you reimbursing in your request for relief? Would it be when the check-off stopped, presumably a lot of people just stopped paying union dues? Is some of them might have continued paying? That's correct, Your Honor. So the union has records of exactly what dues were owed to the union based on the dues authorizations that were intact at the time. And there would have been some members that paid themselves, and we have records of who those people are and how often they paid. And that is properly deducted from the amount that goes to the union. This is actually all explained in further detail in the union's brief to the Board after the 2011 remand. That's in excerpts of record pages 60 and 61. The other aspect of reimbursement would be making those employees whole for the expenses they incurred in paying their union dues out of their own pocket. And those expenses have typically been postage, mileage, opening alternate bank accounts, whatnot. And those are remedies and issues that are reviewed in the compliance stage. So the other reason why there is one clear conclusion in this case about what the appropriate remedy is, is again, that it so happens that in this particular case, there is only one non-moot remedy. Thus, there is a clear conclusion that flows from the record of this case, which makes remand with instruction appropriate here. And if I may, Your Honors, I will reserve the remaining time for rebuttal. Yes. Thank you. Good morning, Your Honors. May it please the Court, I am Greg Lauro for the National Labor Relations Board. With me at counsel's table today is the intervener's counsel, Mr. Lucchi, who will have five minutes of our time. I understand that the issue in this case is whether the Board abused its remedial discretion in the way it tailored the remedy in this case to the particular circumstances. That is, in the Board's view, it didn't grant all of the typical remedies because this was not a typical case. And as we get into that... Counsel, excuse me. Yes, Your Honor. I have a question. When you say it's not typical, do you agree or disagree with opposing counsel's assertion that this is the only case in which a monetary remedy was not given in a dues check-off scenario? In short, I would agree that this is the only case where that particular remedy was not given for this exact violation. But as I was saying... Well, that takes me though to my next question, which is as follows. It seemed to me that the Board's primary rationale was that the employer was entitled to rely on its view of Bethlehem. And we held that that view was just flat wrong. So why is that an appropriate rationale when this Court has held that that view was just flat wrong? No, I understand your question, Your Honor. In the Board's view, the employer correctly believed it was following Board law as it existed in 1995. The Board acknowledged what this Court held in 2011, which is that the Board's rule at that time wasn't adequately explained. But I think that's hindsight. The Court's 2011 and its 2002 decisions raising that issue and describing it weren't available to the employer in 1995. What they had then was clear Board law that they could act the way they did at the expiration of the contract. But that's exactly my problem, is that our holding means that there wasn't Board law to the effect that the employer wished there were. That the law was actually what we said it was in 1995, and not what the Board or the employer thought it was in 1995. And so it seems to me that it's just odd to say, well, even though we were wrong, and having done wrong. No, I understand Your Honor's point. I just want to make sure I adequately express the Board's rationale so that this Court can evaluate it. The Board's concern is, again, that the employer was correct in its view of what Board law was in 1995. I fully understand what the Court held in 2011, but the employer did not know and could not know at that time that 16 years later, this Court would change the law the employer had relied on, and which was settled Board law at the time. So in the Board's view, that is detrimental reliance by the employer. And in these particular circumstances, the Board, exercising its discretion and its duty to tailor the remedy to the particular and unusual facts of this case, decided that May coal relief, dues reimbursement, expenses were not necessary to effectuate the Act's purposes. And I would submit that although reasonable minds could remedy that way, the Board picked a reasonable route, one that's within its broad remedial discretion. When did these employers cease employing? Well, what we know in the record was that the hotels were sold and one was destroyed, I think it was in 1995. But something my opponent is concerned about and argues that I think is a bit premature is the claim that we simply don't have a viable employer to effectuate these remedies because we don't know that yet. The Board's order runs against the respondent and its successors and assigns. At this point, there's been no finding whether there is a successor that can effectuate the Board's order. That successor may or may not be Archan, who's representing itself here today. It's just a finding that has not been viable operating in Nevada that can effectuate these remedies. If there is no viable employer, counsel argued essentially that these remedies are meaningless. Well, that's something. There's nothing to them. I understand counsel's argument. I sympathize with their concerns. My point is that it's premature at this stage of the proceedings. We don't have a record as to whether there is a viable employer. We don't have those findings. That's something the Board would address in compliance. And a couple things about their concern with the mootness of these remedies. At one point, one argument they made to the Board was we don't think two of these remedies, cease and desist and notice posting, are any good if the businesses in question have been sold. But as the Board explained, if the record shows these businesses have been sold, and I understand the evidence of that, we will require mailing of violations found. Also, the Supreme Court has rejected the idea that those remedies, cease and desist and notice posting, are not viable absent monetary relief. The Supreme Court explained that they are still strong sanctions. Well, I could agree to that if you have an employer who's got employees and the wrong is unremitied until there is an order by the Board. There's a statement somewhere in here, in one of the briefs, and maybe you're saying it's not supported by the record, that what employment is being done in these places right now is under a new contract with a new employer and there is a checkoff. Yes, Your Honor. Those are all considerations that the Board would consider in compliance. Those are not a matter of the record in this case, and the Board has not yet had compliance hearings to make findings on those issues. As the Court knows, it is the Board's judicially approved practice, after an order has been enforced or the scope of the remedy is settled, to then have compliance proceedings to tailor it to the particular considerations that may arise, such as whether we have an employer who could viably effectuate these remedies. But just so I understand your position correctly, it's that reliance is the essence of the Board's position here. Yes, I think that is the essence of the Board's position, and as the Board pointed out, if the Board reasonably found, because I'm recognizing there is some discretion here, that this employer relied on Board law as it existed at the time, there was no reason to believe the employer wouldn't continue to follow dues checkoff law as it stands now. And I think the Board's explaining this is not like other cases where you have the deterrence concerns with a repeat of violator with the same kind of violation. But I appreciate this concern's, this Court's concern that in 2011, it stated what the law is as to dues checkoff, and that the Board hadn't adequately explained their different rule. But I think, as argued by my opponent, that that's hindsight. Again, this employer didn't have the benefit of the Court's decision in 2011 or the concerns that this Court stated in its decision in 2002. We're relying there on subsequent events, events seven years after the employers acted and chose to act as to Board law that existed at the time. And there seems to be another theme that runs through the Board's decision, and that's that if they were to award reimbursement, it would come with interest, compound interest, under the Board's law, and they seem to think that that's unfair. I think that does dovetail. And, of course, you're right, Your Honor, that's another concern. That dovetails with the Board's concern about the employer's detrimental reliance on Board law as it existed at the time it acted. And to compound the interest, in the Board's view, would compound the unfairness. But, you know — So it's unfairness coupled with reliance? I think it could be put that way. Or it could be said that the compound interest would be an exacerbating factor of that reliance. And I do acknowledge, I know that the litigation in this case has been protracted, but that doesn't change the fact that the employer was following Board law as it existed in 1995. And, yes, that is a main part of the Board's remedial decision in this case, but I want to clarify a couple things that I think will be helpful, and that's what I don't think should be in this dispute in this case. The Board clearly said, we acknowledge this Court's finding of the violation, we accept it as the law of the case, we acknowledge this Court's remand to determine what relief is warranted, a remand that didn't dictate what should be in the remedy, but left it to the Board's usual discretion to determine what the remedy should be, and that the Board awarded traditional remedies to address this violation. It just didn't award make whole relief because this was a legal case. I mean, it's been a loss to the union. Once the checkoff stops, it's not going to be able to collect some of its dues. That may be so. I mean, that's just going to happen. And so that you're in a position of saying, well, there was a mistaken reliance, an unforeseeable change, and the union ought to be forced to pay the cost of that. Well, Your Honor, with respect, I understand your question. I do view it a little differently, and I'm not trying to harp on semantics here. I think it was only a mistaken reliance in that the Court, 16 years later, authoritatively expressed a different view of the law. I don't think it was mistaken reliance. I think the employer did have a correct view of what Board law was at the time, and I think that's the importance to the Board. It was seven years later. Yeah, if you want to share some time with co-counsel, I suggest you do it now. Thank you, Your Honor. Thank you, Your Honor. Please support Stephen Lukey for Intervenor Archon Corporation. Initially, I'd like to answer Judge Canby's earlier question. The original unfair labor practices were filed by the union on August 22nd of 1995. A week later, the Hacienda Hotel was sold on August 31st of 1995, and the Sahara was sold on October 2nd of 1995, all within the same year. Interestingly enough, the petitioner pointed out this is a rare case. It is, and the Board does have, as the Court ordered, discretion to award appropriate remedies based on particular facts of every case. In our view, they did here, particularly given the length of time that it elapsed over the course of four trips to see you, but also the fact that the hotels were sold early on in these proceedings, and extraordinary remedial relief was called for and, in our view, appropriately granted. The petitioner here, in its arguments, would substitute its judgment for that of the NLRB with respect to what an appropriate remedy is. In our view, it's the NLRB and not the petitioner that is charged by statute to carve appropriate remedies. It doesn't look like they received any meaningful remedy. That, Your Honor, I think puts a finger on the probably most salient point here. That's a compliance question. These are all compliance questions, including who, if any, which, if any, entity is a successor or an S&E to the employers herein. That is a compliance question. It has been, we think, decided by the Supreme Court in Golden State bottling, where successors can well be liable for the unfair labor practices of their predecessors. That's a compliance question. In this matter, the union has asserted in, or the petitioner has asserted in its reply brief that the current employers of those hotels are not successors. There's no foundational fact in their brief to support that assertion, nor is there any citation to relevant authority. They also assert in their reply brief that the employed in the industry, I don't know where that assertion comes from, but there are no foundational facts in their brief, nor is there citation to authority. Those are compliance questions that are relevant to these proceedings. Whether or not there are successors in the signs, whether or not there is liability, whether or not there are adequate ways to notify employees of the remedial, the obviously remedial order to post notices and advise employees. Does Archon itself view itself as a successor, or is it just not taking a position? We're not taking a position, Your Honor. Archon is the parent of the employers herein, and we believe that to be a compliance question as well. So Judge Graber had a, I thought, a very focused question that I like your response to, which was, you know, we said with the law, we said there was a violation when they stopped the dues check on. The traditional remedy, and as we both sides have acknowledged, has been reimbursement. And this seems to be the only case where that remedy hasn't been afforded. And I don't quite explain to me from your perspective, representing Archon, why not? Two points, if I may, Your Honor. Number one is that Bethlehem's deal was decided in 1962. It was affirmed in relevant part by the Third Circuit in 1963. It was viewed by all practitioners, I think, as controlling law thereafter for three decades, and was cited, as I think we mentioned in brief, I know we mentioned it brief, with approval in over 100 cases during those intervening years. But Bethlehem's based on the fact that the checkoff then is tied to a forcible requirement of union membership, which expires by statute when the employment, when the contract expires. And it makes sense in that situation, when you can no longer force people to be union members, that you stop the checkoff. But when you have voluntary union members whose relationship isn't forced, its union membership isn't forced, there's nothing that expires when the contract expires with regard to their employment relationship. And it seems to me it's a different situation. Most people would understand that. We certainly understand the view today, Your Honor, certainly of this court, and appreciate that. But during the three decades between Bethlehem's deal and now, I think it's fair to say that employers relied on Bethlehem's deal and its progeny, including Tampa Sheet Metal, in a right-to-work state, that had a different view of the law. Tampa is the only one that was in a right-to-work state, is that right? To my knowledge, yes, Your Honor. In addition, Lincoln Lutheran, which we cite in brief as well, and I believe the NLRB did too, and it's not the only case where the NLRB has issued perspective rather than retroactive remedies based on the equities of the case. And in our view, particularly given the passage of time, it would be a manifest injustice to order the payment to petitioner of union dues and compound interest given the quite obviously unique factors present in this case. The Labor Board and even at least one court of appeal found to be the state of the law at the time. And there is a disagreement by the Ninth Circuit. We understand that. We understand the rationale. But given what's happened in this case, the amount of time and the detrimental reliance that the employers had. You're over your time. I let you go. I see that. Sorry, but thank you. That's okay. That's fine. Thank you. Thank you very much. Well, we'll hear yet some time for rebuttal. The board in its argument today and in its brief said that the litigation in this case has been protracted. But the thing that has been truly protracted in this case has been the board's And now the board wants to prolong this case even further by proceeding to a compliance hearing when it knows what the outcome of that compliance hearing will be. It is undisputed that the employers are no longer functioning in Las Vegas. Now, even if there are successors in this case, which the union contends that there is a successor, the ordered remedies are moot. It would be moot to order a successor to cease and desist from violating this particular law. It would be moot to order the successor to reinstate the dues checkoffs for its employees. It would be moot to order the successor to bargain with the union. Again, the only viable remedy is the money damages. And for discussion of what happens to remedies when the employers change the nature of their business, I would point the court to Emhart Industries 907 F. 2nd. 372, which is a second circuit decision. And that, again, found that most remedies will require a functioning employer, whereas money damages do not have that requirement. Listing the moot remedies in a notice and then putting a stamp on them, furthermore, does not Frankenstein these remedies back to life as written. Those remedies are moot. The board, meanwhile, in this case, should not be permitted to sweep aside 50 years of precedent in these dues checkoff violation cases by refusing to recognize this court's decision. The remedial order must be reversed. And this is this rare case. The board has proved itself incapable of understanding the court's decision in 2011 or in any of the court's prior decisions. Remand without instruction would only further prolong this 22-year case. The union asks the board to approve the remedy. Thank you, Your Honors. Thank you, counsel. We appreciate your arguments in this long-running case, and we'll submit it at this time. Thank you very much. Safe travels back.
judges: Canby, Graber, Paez